UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAVID ORDWAY, | ) | Civil No. 06-CV-486-L(WMc) |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **MOTION FOR SUMMARY** |
| v. | ) | **JUDGMENT and GRANTING IN** |
| | ) | **PART MOTION FOR SUMMARY** |
| METROPOLITAN LIFE INSURANCE | ) | **ADJUDICATION [doc. #18]** |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant Metropolitan Life Insurance Company ("MetLife" or "defendant") moves for summary judgment or in the alternative, for partial summary judgment [doc. #18]. The motion is fully briefed and has been submitted without oral argument. Having carefully considered the matters presented, the Court enters the following decision.

### Factual and Procedural Background

David Ordway ("Ordway" or "plaintiff") was the general manager of an automobile dealership, MiraMar Volkswagen Audi. On February 19, 2004, plaintiff underwent total knee replacement surgery. (Administrative Record[1] ("AR") 24) Because of post-operative arthrofibrosis, plaintiff had a second surgery for total knee replacement revision arthroplasty on June 7, 2004  (AR 89, 104) Plaintiff claims a disability as of September 30, 2004, as a result of

---

[1]      Defendant provided the Administrative Record ("AR") with its motion for summary judgment. Defendant numbered the pages in the AR as "MET-ORD ____". The Court will use the MET-ORD page numbers in providing citations to the AR.

1  right knee arthrofibrosis.  Ordway was notified on September 24, 2004, that he was terminated

2  from his employment effective October 1, 2004. (AR 79)  Plaintiff last worked on September 23,

3  2004. (AR 180)

4      Plaintiff had a disability policy issued by MetLife through his employer.  On September

5  29, 2004, Ordway notified MetLife of his disability benefits claim. (AR 27)  Dr. F. Craig

6  Swenson ("Dr. Swenson"), plaintiff's treating orthopedic physician, provided an Attending

7  Physician's Statement certifying plaintiff's disability as of September 30, 2004 as a result of

8  knee pain and limited movement.  (AR 186-188)  Dr. Swenson's statement noted that plaintiff

9  could sit four hours per day intermittently; could lift/carry 11-20 pounds occasionally; and could

10 not stand and walk for more than 1-2 hours per day.  (AR 188)

11     MetLife originally denied plaintiff's claim on March 5, 2005 after reviewing Dr.

12 Swenson's statement and progress reports and a surveillance report initiated by defendant.  (AR

13 124-125)  Plaintiff was notified of the reasons for the denial and of his right to file an appeal.

14 (*Id.*)  On July 18, 2005, plaintiff filed an appeal and defendant subsequently conducted another

15 review.  MetLife sent a letter dated August 19, 2005, indicating that it was upholding its original

16 determination and the reasons for its decision.[2]  (AR 83-87)

17     One of MetLife's Financial Services Representatives, Frank Meram, contacted MetLife

18 about plaintiff's concerns over the denial of long-term disability benefits. (AR 74-75)  In

19 response to Meram's contact, defendant sent plaintiff a letter dated December 21, 2005, offering

20 clarification of its decision to deny plaintiff's claim and setting forth the information that was

21 reviewed on appeal. (AR 71-72)

22     Plaintiff also sent a letter dated February 28, 2006, that advised defendant that the Social

23 Security Administration had approved disability benefits for plaintiff commencing in March

24

25 _____

26 [2]    Defendant indicates that the review on appeal "included but was not limited to the
following information:" Dr. Swenson's progress notes from June 17, 2004 to April 27, 2005;
27 Dr. Paul Pollice progress note dated May 6, 2005; physical therapy notes dated October 7, 2004
to February 20, 2005; MRI dated December 31, 2003; Marty-Meador letter dated July 12, 2005
28 from Fuller Ford; and the video surveillance and report.  Defendant also states that the
information was reviewed by an Independent Physician Consultant, Board Certified in
Orthopedic Surgery.  (AR at 71-72)

1    2005.  (AR 34)

2         On April 10, 2006, in response to the submission of additional information from plaintiff,

3    MetLife again reviewed the newly provided information and indicated that the information

4    would not change its decision to deny plaintiff's claim.  (AR 31).

5         Plaintiff filed a Complaint in this Court on March 3, 2006 seeking damages for

6    defendant's failure to approve plaintiff's disability benefits claim.   On January 17, 2007,

7    defendant filed a motion for summary judgment, or in the alternative, for partial summary

8    judgment.   Defendant's motion has been fully briefed and is considered below.

9                                    **Standard of Review**

10        **1.    In General**

11        Defendant moves for summary judgment;[3] however, the usual legal standard for summary

12   judgment motions generally does not apply where the Court is asked to review an ERISA plan

13   administrator's decision. *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999); FED.

14   R. CIV. P. 56(c).  In ERISA actions, where the plaintiff is challenging the Plan administrator's

15   denial of benefits, "a motion for summary judgment is merely the conduit to bring the legal

16   question before the district court and the usual tests of summary judgment, such as whether a

17   genuine dispute of material fact exists, do not apply." *Bendixen v. Standard Ins. Co.*, 185 F.3d

18   939, 942 (9th Cir.1999).   Thus, a summary judgment motion resting on the administrative

19   record is not a typical summary judgment, but rather, is a procedural vehicle for determining

20   whether benefits were properly granted or denied.

21        A threshold question, therefore, is the standard of review the court must apply in these

22   types of cases.  A denial of benefits under an ERISA plan "is to be reviewed under a *de novo*

23   standard unless the benefit plan gives the administrator discretionary authority to determine

24   eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v.*

25   *Bruch*, 489 U.S. 101, 115 (1989); *Kearney v. Standard Ins. Co,* 175 F.3d 1084, 1090 (9th Cir.

---

27        [3]    It is the usual practice in cases seeking review of  Plan Administrator's decisions
28   in ERISA cases for the parties to file cross motions for summary judgment.  Here, plaintiff has
     not filed a motion for summary judgment.

1999)("the district courts must review claims *de novo* unless the discretion to grant or deny claims is 'unambiguously retained' by a plan administrator or fiduciary").  *"De novo* is the default standard of review."  *Abatie v. Alta Health & Life Insur. Co.*, 458 F.3d 955, 963 (9th Cir. 2006).  But where a Plan document gives an administrator discretionary authority, a court must apply the "abuse of discretion" or "arbitrary and capricious" standard of review to its decision to deny benefits.  *Firestone,* 489 U.S. at 111; *see also*, *Abatie* 458 F.3d at 963; *Bendixen,* 185 F.3d at 942.

Under the abuse of discretion standard, the Court reviews the administrative record to determine whether substantial evidence supports the administrator's decision.  *Clark v. Washington Teamsters Welfare Trust,* 8 F.3d 1429, 1432 (9th Cir. 1993).  If so, then the administrator's decision will be upheld, even though the record may contain evidence that could support a contrary conclusion.  *Snow v. Standard Ins. Co.*, 87 F.3d 327, 332 (9th Cir. 1996), overruled on other grounds by *Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999)(*en banc*); *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1473 (9th Cir. 1993); *Eley v. Boeing Co.*, 945 F.2d 276, 279 (9th Cir. 1991); *Bolling v. Eli Lilly & Co.*, 990 F.2d 1028, 1029-30 (8th Cir. 1993)("The [administrator] did not abuse its discretion merely because there was evidence before it that would have supported an opposite decision."); *Mizzell v. Paul Revere Life Ins. Co.*, 118 F. Supp. 2d 1016, 1019-20 (C.D. Cal. 2000).  Under this deferential standard, it is an abuse of discretion for an ERISA plan administrator to make a decision without any explanation, or in a way that conflicts with the plain language of the plan, or that is based on clearly erroneous findings of fact.  But the fact that the plan administrator's decision is directly contrary to some evidence in the record does not show that the decision is clearly erroneous.  Rather, review under the "clearly erroneous" standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed.  *Snow*, 87 F.3d at 331.

In *Abatie*, the Ninth Circuit recently considered the question of whether the standard of review changes to *de novo* review when a plan confers discretion but its administrator operates under a conflict of interest or the process is irregular.  *Abatie*, 458 F.3d at 962.  The *Abatie* court noted that the *Firestone* case requires an "abuse of discretion review whenever an ERISA plan

grants discretion to the plan administrator, but a review informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Id.* at 967.  In other words, a court is required to weigh a conflict of interest as a factor in abuse of discretion review and to consider a case-by-case balancing.  *Id.* at 968.

Under the abuse of discretion standard, a court generally limits its review to the record before the plan administrator.[4]  *Id.* at 970 ("Today, we continue to recognize that, in general, a district court may review only the administrative record when considering whether the plan administrator abused its discretion . . .).  But, as the *Abatie* court also noted, "[a] subtler question arises when a court must decide how much weight to give a conflict of interest under the abuse of discretion standard." *Id.* at 970.  The Ninth Circuit now holds that:

> The district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established by extrinsic evidence or otherwise.

*Id.*  Thus, the abuse of discretion standard of review does not change to a *de novo* review when the plan confers discretionary authority and the administrator has a conflict of interest.  Rather, the abuse of discretion standard remains applicable but is informed by weighing the conflict of interest.

A finding of a conflict of interest may be based on whether the Plan administrator:

> provides inconsistent reasons for denial (citation omitted); fails to adequately investigate a claim or ask the plaintiff for necessary evidence (citation omitted); fails to credit a claimant's reliable evidence (citation omitted); or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of the evidence.

*Id.* at 968-69.

### 2.    Supplementing the Administrative Record

The assigned magistrate judge held a telephonic status conference on February 8, 2007, at which time plaintiff sought to have discovery reopened with respect to the single issue of conflict of interest.  The magistrate judge set briefing on the issue of reopening discovery by

---

[4]    The court may admit additional evidence on *de novo* review.  *Abatie*, 458 F.3d at 970.

1    requiring the simultaneous filing of letter briefs. (Order filed February 9, 2007 [doc. #22]).  The

2    parties were also permitted to file responses to the letter briefs.  The Court notes that on

3    February 16, 2007, plaintiff filed an *ex parte* application before the district court seeking to

4    delay the March 5, 2007 hearing and ruling on defendant's present motion for summary

5    judgment until the magistrate judge had entered a decision with respect to reopening discovery

6    (*Ex parte* application [doc. #23]).  Defendant opposed the *ex parte* application but the Court

7    stayed consideration of the summary judgment motion until the magistrate judge had an

8    opportunity to consider reopening discovery on the issue of conflict of interest.  (Order filed

9    February 26, 2007 [doc. #27])

10         On June 6, 2007, the magistrate judge entered a decision concerning discovery and

11   related issues. (Order filed June 6, 2007 [doc. #36]).   First, the magistrate judge, relying on

12   *Abatie*, denied plaintiff's request to conduct additional discovery with respect to the conflict of

13   interest issue.  (*Id*. at 1-2)

14         Plaintiff also sought the introduction of the videotape that defendant made that purports to

15   show that plaintiff could walk for extended periods of time.[5]  Plaintiff alleged that the videotape

16   itself was not a part of the Administrative Record but instead only investigator Michael Reddy's

17   Report (AR 129), based upon the videotape, was included in the Administrative Record.

18   Plaintiff also argued that a letter from Jack Collins, a witness to the events on the videotape,

19   should be included for the Court's consideration in determining the level of conflict of interest.

20   The magistrate judge permitted the introduction of both the surveillance videotape and witness

21   letter.[6]  (June 7, 2007 Order at 2-3 [doc. #36])

22         In its "motion to correct two factual statements in Magistrate Judge McCurine's June 7,

23   2007 Order, defendant states that "the surveillance videotape (actually a compact disk) was

24

25         [5]      The surveillance report of Michael Reddy indicates that he observed plaintiff for
26   approximately 28 minutes on January 25, 2005 and obtained three minutes and 28 seconds of
     video tape documenting plaintiff's movements on a golf course.  (AR 105-106)

27         [6]      Based on the applicable law, the Court does not consider the Collins' letter in
28   determining whether defendant abuse its discretion in denying plaintiff's claim but only insofar
     as plaintiff has alleged a conflict of interest.

1  always part of the Administrative Record that its personnel thoroughly reviewed and analyzed in

2  connection with Plaintiff David Ordway's . . . claim for long-term disability benefits" but "it

3  (the surveillance videotape on compact disk) was simply omitted  inadvertently from the copy

4  provided to Ordway's counsel and filed with the Court." (Motion at 1 [doc. #37])

5        Finally, plaintiff sought to include the full deposition testimony of plaintiff's employer,

6  Craig Joyner.  Excerpts of Joyner's deposition had been made part of the Administrative Record.

7  The magistrate judge, concluding there was no prejudice to defendant, granted plaintiff's request

8  to supplement the AR with the complete Joyner deposition.  (June 7, 2007 Order at 3 [doc. #36])

9  Defendant points out in its motion to correct factual statements that the Joyner deposition was

10 not taken in this litigation, but instead was taken in a separate lawsuit entitled *David Ordway v.*

11 *Richard C. Richley, M.D.*, that is pending in the Superior Court in San Diego.  Nevertheless, the

12 entire Joyner deposition has been provided to this Court for review with respect to the issue of

13 conflict of interest.

14       Because the magistrate judge has entered his decision, the Court will now consider

15 defendant's motion for summary judgment.

16       **3.    Appropriate Standard of Review in this Action**

17       The *Firestone* Court noted that if a Plan grants an administrator the right to determine

18 eligibility for benefits or to construe the terms of the plan, it has discretionary authority.  489

19 U.S. at 111.  In the present case, the Plan provides, in relevant part:

20            MetLife in its discretion has authority to interpret the terms, conditions, and
             provisions of the entire contract.  This includes the Group Policy, Certificate and
21            any Amendments.

22 (AR 189).  The Court finds that this languages confers discretion on the plan administrator.

23       The Court must then consider whether there is any showing of conflict of interest or

24 procedural irregularities.  Defendant acknowledges an inherent structural conflict of interest

25 because it is both the claim decision maker and payor of benefits.

26       Plaintiff argues, however, that the conflict of interest goes beyond the structural conflict

27 noted by defendant.  Plaintiff rightly contends that defendant initially erred in denying benefits

28 by misinterpreting the medical file.  Instead of the two total knee replacement surgeries that

1  formed the basis for plaintiff's disability claim, defendant denied the claim based on deep vein

2  thrombosis and a meniscal tear.  (AR 124)   This misdiagnosis is clearly erroneous but defendant

3  appears to have corrected this fact with respect to subsequent reviews of plaintiff's claim.

4       Plaintiff also argues that defendant denied benefits because it erroneously relied on the

5  incorrect belief that plaintiff was employed in a sedentary position and had an executive

6  assistant.  Plaintiff presented excerpts from Joyner's deposition to show that plaintiff's activity

7  level as the general manager were not sedentary, notwithstanding Joyner's prior statement that

8  plaintiff's position was sedentary. (AR 36-38) I t is also undisputed that plaintiff did not have an

9  executive assistant.  The continuing use of and reliance on flawed evidence suggests some

10  conflict of interest on the part of the Plan administrator.

11       Plaintiff also faults defendant for failing to have him physically examined by an

12  independent physician.  Although under the policy, defendant has the right to have such an exam

13  taken, it is not a requirement.  Nevertheless, defendant's decision to not have plaintiff submit to

14  an independent medical exam under the circumstances of this case raises a slight inference of

15  conflict of interest.

16       Finally, plaintiff contends that defendant failed to properly credit plaintiff's reliable

17  evidence, and in particular, plaintiff's attending physician's opinion that plaintiff was disabled.

18  Defendant did not set forth a rational basis for discounting plaintiff's physician's opinion in

19  favor of the opinion of a non-treating, non-examining physician's review of the medical records.

20  Again, this suggests some level of conflict of interest.

21       The Court also notes that defendant's stalwart reliance on a three minute, 28 second

22  videotape and surveillance report to demonstrate plaintiff's level of physical activity with respect

23  to his employment is suspect in the absence of any other evidence of activity level.

24       Here, the Court finds that an abuse of discretion standard is applicable to a review of the

25  decision to deny plaintiff benefits.  In its review, the Court also weighs the fact that there is a

26  structural conflict of interest and as discussed above, other aspects of the record and

27  supplemented materials that suggest the Plan administrator had a conflict of interest that

28  influenced defendant's decision to deny plaintiff's claim.

# DISCUSSION

## 1.    Plan Language

Disability is defined in the Plan as:

"Disabled" or "Disability" means that, due to sickness, pregnancy or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and

1.  during your Elimination Period and the next 24 month period, you are unable to earn more than 80% of your Predisability Earnings or Indexed Predisability Earnings at your Own Occupation for any employer in your Local Economy; or

2.  after the 24 month period, you are unable to earn more than 80% of your Indexed Predisability Earnings from any employer in your Local Economy at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience and Predisability Earnings.

. . .

"Own Occupation" means the activity that you regularly perform and that serves as your source of income.  It is not limited to the specific position you held with your Employer.  It may be a similar activity that could be performed with your Employer or any other employer.

(AR at 206-07).

## 2.    Reviewing Defendant's Determination

### a.    Medical Reports

On September 30, 2004, plaintiff's treating orthopedic surgeon, Dr. Swenson, advised plaintiff to discontinue working because of knee pain and difficulty with range of motion (AR at 169).  On January 31, 2005, defendant requested all information Dr. Swenson had regarding plaintiff's disability.  (AR 144)  Dr. Swenson provided monthly progress reports including reports dated October 14, 2004; November 12, 2004; December 10, 2004; and January 14, 2005. The January 14, 2004 report states, in part, "Mr. Ordway is now 7 months postop.  He is continuing to have pain.  His walking tolerance is 3-4 blocks. . . .  All we can do is wait and continue to work on his range of motion. . . .  He will return in three months."  (AP 137)

Defendant's nurse consultant reviewed this medical information, which defendant misinterpreted, along with the surveillance report and videotape.  The nurse consultant concluded that the medical information and defendant's activity level suggested by the surveillance did not support a severity of impairment level that would prevent plaintiff from

9

06cv486

1 returning to work.  (AR 12-13)

2      The above statements from Dr. Swenson comprise the medical evidence presented to

3 defendant prior to making its March 3, 2005 determination to deny plaintiff benefits.  (AR 124-

4 125)

5      Subsequent to its initial determination to deny plaintiff benefits, plaintiff provided the

6 April 27, 2005 statement of Dr. Swenson that provided in relevant part:

7      [Plaintiff] is continuing to have significant disability as a result of arthrofibrosis in
     his revision right total knee arthroplasty. . . . Mr. Ordway would be able to return

8      to employment with restriction limited to light work.  He can work standing or
     walking with minimal demands for physical effort.  He is to do no heaving lifting,

9      no prolonged weight bearing, no climbing, walking over uneven ground, squatting,
     kneeling, crouching, crawling, or bending.  These restrictions will exist

10      indefinitely.

11 (AR 104-107 at 107).  Dr. Swenson also indicated that by September 30, 2004, plaintiff's

12 condition had significantly deteriorated.  Finally, Dr. Swenson noted that plaintiff could work

13 but with accommodations.

14      Paul F. Pollice, M.D. performed an orthopaedic evaluation and his report, dated May 5,

15 2005, states that "even with aggressive physical therapy, I would not expect that to positively

16 impact his range of motiion and perceived stiffness." (AR 109)

17      Dr. Richard Silver, a board-certified orthopedic surgeon, served as an independent

18 physician consultant for defendant's review of plaintiff's long-term disability claim.  On August

19 3, 2005, after reviewing the entire claim file, including all medical records submitted initially

20 and on appeal, Dr. Silver opined:

21      Mr. Ordway is capable of working full time in his normal capacity as a general
     manager, with frequent position changes, ambulation, sitting, standing, bending,

22      and occasional stooping.  He has been capable of doing so for quite some time. . . .
     Mr. Ordway does have some functional limitations. These functional limitations

23      are not precluding his employment, . . .  Although he has a loss of range of motion
     of the left knee, his left knee is still functional and is capable of being utilized in

24      his normal activities of daily living as well as in his form of employment as a
     general manager, standing, walking, sitting, talking, and getting in and out of

25      chairs, up and down areas, attending meetings, etc.  There is nothing in the range
     of motion of his left knee that precludes his employment . . .

26

27 (AR 89-94 at 91).

28      On August 19, 2005, defendant upheld its denial of plaintiff's claim on the basis of the

1    above cited medical records.

2        **b.    Other Considerations**

3        Craig Joyner, owner and president of Miramar Volkswagon Audi, plaintiff's employer,

4    provided MetLife with a statement that as a general manager, an executive position, plaintiff was

5    in a sedentary job.  (AR 180-82)  Plaintiff disputed this classification.  Nine months after

6    defendant denied plaintiff's claim, plaintiff provided MetLife with excerpts from Joyner's

7    deposition which indicated that the general manager position involved non-sedentary duties and

8    activities.[7]  (AR 35-44)   Defendant reconsidered its determination after receiving this

9    information but again denied plaintiff's claim concluding that the medical and other records did

10   not support a disability finding.  (AR 31).

11       Plaintiff also provided defendant with a July 12, 2005 letter from the general manager at

12   Fuller Ford, a dealership where plaintiff did not work, who stated that the general manager job is

13   not sedentary work. (AR 108)

14       Defendant authorized a surveillance report and videotape of plaintiff's physical activity

15   level.  The investigator's report and the videotape upon which the report was based, was

16   included as part of the Administrative Record because defendant considered both in denying

17   plaintiff benefits.  As noted above, the report was based on a three minute and 28-second

18   surveillance videotape taken by defendant's investigator that allegedly shows plaintiff engaging

19   in a round of golf, plaintiff lifting and carrying a bag of golf clubs, and swinging a golf club.

20   There is nothing else in the AR to support defendant's conclusion that plaintiff was able to return

21   to a similar employment position based on his physical activity level.

22       Defendant contends that its decision to deny plaintiff's disability claim was also based, in

23   part, on the timing of plaintiff's claim. (Reply memo. at 2)  Specifically, plaintiff continued to

24   work as the general manager of the automobile dealership after his second knee surgery until he

25   was notified on September 24, 2004  that his employment was terminated as of October 1, 2004.

26   ─────────────

27       [7]    As noted above, the entire Joyner deposition has been provided to this Court rather
     than just the excerpts presented to MetLife in its decision-making process.  As noted above, the
28   Joyner deposition was taken in the case of *David Ordway v. Richard C. Richley, M.D.*, that is
     pending in the state court.

1   Five days after receiving the notification of his termination, plaintiff submitted his claim for

2   disability benefits (AR 86-87) and on September 30, 2004, plaintiff's treating physician ordered

3   plaintiff to stop working because of his alleged disability.  According to defendant, this sequence

4   of events raises the issue that plaintiff's request for disability benefits was tied to his termination.

5

6           **3.     Assessment of Defendant's Review**

7           The Court initially notes that plaintiff concedes that defendant offered reasons for its

8   decision denying disability benefits but argues defendant's decision is based on clearly

9   erroneous findings of fact and "is made under the cloud of [its] conflict of interest.  (Opp. at 9)

10  Thus, the Court must determine whether, under an abuse of discretion standard of review and

11  considering the AR without the inclusion of extrinsic evidence but informed by the weighing of

12  any conflict of interest shown, the decision to deny plaintiff's claim is based on clearly

13  erroneous findings of fact or was made in a way that conflicts with the plain language of the

14  Plan.

15          The first denial of benefits to plaintiff  was based on a clearly erroneous diagnosis.[8]

16  Nevertheless, defendant appears to have corrected its diagnosis in later documents.

17          It also appears that defendant reviewed all the medical and other evidence presented by

18  plaintiff for consideration including other relevant factors that plaintiff brought to the attention

19  of defendant.  Defendant reopened its process and determination when plaintiff requested the

20  opportunity to introduce additional supporting materials. With the subsequent reviews of

21  additional information submitted by plaintiff, the Plan administrator's decision denying benefits

22  was not based on an incomplete record.

23          But as noted above, although defendant offered reasons for its denial of benefits,

24  defendant has not provided any rationale for discounting plaintiff's treating physician's opinion

25

26

27          [8]      The March 5, 2005 letter denying plaintiff long-term disability benefits states:
     "Lacking from the medical information is any doppler studies to indicate you were ever positive
28  for a DVT to your leg or an MRI indicating a meniscus tear."  Plaintiff never contended he
     suffered from DVT or a meniscus tear in seeking disability benefits.  (AR at 105)

1   of disability.[9]   Instead, defendant appears to rely exclusively on the opinion of a non-treating,

2   non-examining physician in finding no disability on the part of plaintiff.

3          Moreover, defendant relied heavily on a three minute, 28 second surveillance videotape.

4   Defendant's "snapshot" approach to determining plaintiff's activity level is far from substantial

5   evidence with which to determine benefits.  Hitting one golf ball does not provide a view of

6   physical capability particularly in the context of the work environment.

7          Having carefully reviewed the entire AR and relying solely on the AR, the Court finds

8   and concludes that although defendant's finding of non-disability is supported by some

9   evidence, the taint of conflict of interest seriously undermines defendant's decision, and the

10  evidence, when taken as a whole, is not substantial.  The Court is not substituting its own

11  judgment in making this finding.  The Court is cognizant that an administrator's decision should

12  be upheld even though the record may contain evidence that could support a contrary conclusion

13  but only if the administrator's decision is supported by substantial evidence and the conflict of

14  interest is not significant.  Here, applying the abuse of discretion standard, and weighing the

15  conflict of interest as a factor in an abuse of discretion review, the Court has a definite and firm

16  conviction that a mistake has been committed.  *Snow*, 87 F.3d at 331.  Accordingly, defendant is

17  not entitled to summary judgment.

18                                          **Conclusion**

19          Based on the foregoing, to the extent defendant bases its alternative motion for summary

20  adjudication on whether the abuse of discretion standard of review is applicable, the motion for

21

22          [9]        The Court is not attempting to apply the same standard of review that is
    undertaken in the context of a Social Security appeal in this case.  In reviewing a Social Security
23  decision, "more weight is given to a treating physician's opinion than to the opinion of a
    nontreating physician because a treating physician is employed to cure and has a greater
24  opportunity to know and observe the patient as an individual.  Likewise, greater weight is
    accorded to the opinion of an examining physician than a non-examining physician." *Andrews
25  v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (internal quotation marks and citations
    omitted).  "A treating physician's opinion on disability, even if controverted, can be rejected
26  only with specific and  legitimate reasons supported by substantial evidence in the record."
    *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  "This can be done by setting out a
27  detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's]
    interpretation thereof, and making findings.  The ALJ must do more than offer his conclusions.
28  He must set forth his own interpretations and explain why they, rather than the doctor's are
    correct." *Id*.

06cv486

summary adjudication is **GRANTED**.  Similarly, to the extent that defendant contends the Court must rely solely on the Administrative Record in reviewing the Plan administrator's decision under the abuse of discretion standard, the motion for summary adjudication is also **GRANTED** in accordance with the *Abatie* decision.   In all other respects, defendant's motion for summary judgment is **DENIED.**

The parties shall jointly contact the assigned magistrate judge for further proceedings including but not limited to a settlement conference within ten days of the filing of this Order.

**IT IS SO ORDERED.**

DATED: August 21, 2007

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. WILLIAM McCURINE, JR.
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

14

06cv486